# In the United States Court of Federal Claims

No. 18-1641C
(Filed:  March 7, 2019)

*************************************

TOMMY-LEE SHANE AMMON,           *

                                           *

                Plaintiff,       *

                                           *     <u>Sua Sponte</u> Dismissal; Sovereign Citizen;

      v.                     *     <u>Pro Se</u> Plaintiff; Subject-Matter

                                         *     Jurisdiction; RCFC 12(h)(3); Frivolous

THE UNITED STATES,            *     Claims; 28 U.S.C. § 1500

                                         *

               Defendant.     *

*************************************

<u>Tommy-Lee Shane Ammon</u>, San Luis, AZ, <u>pro se</u>.

<u>John S. Groat</u>, United States Department of Justice, Washington, DC, for defendant.

## OPINION AND ORDER

      In this case, Tommy-Lee Shane Ammon, a prisoner appearing <u>pro se</u>, seeks assistance in redeeming an alleged savings bond in the amount of $49,777,666.  Mr. Ammon contends that defendant United States' failure to redeem said bond constitutes both a breach of contract and a taking without just compensation in violation of the Takings Clause of the Fifth Amendment to the United States Constitution ("Takings Clause").  As explained below, the court lacks jurisdiction to consider Mr. Ammon's claims and finds them to be frivolous.  Thus, without awaiting a response from defendant, the court dismisses his complaint.

## I.  BACKGROUND

### A.  The Sovereign Citizen Movement

      Mr. Ammon's complaint and supplemental complaint reflect that Mr. Ammon adheres to the belief that even though he was born and resides in the United States, he is his own sovereign and is therefore not a United States citizen.  This belief is the hallmark of the sovereign citizen movement.  So-called "sovereign citizens" believe that they are not subject to government authority and employ various tactics in an attempt to, among other acts, avoid paying taxes, extinguish debts, and derail criminal proceedings.  <u>See, e.g.</u>, <u>Brown v. United States</u>, 105 F.3d 621, 622-23 (Fed. Cir. 1997) (describing an attempt to avoid payment of federal income taxes); <u>United States v. Schneider</u>, 910 F.2d 1569, 1570 (7th Cir. 1990) (describing an attempt to present a defense in a criminal trial); <u>Bryant v. Wash. Mut. Bank</u>, 524 F. Supp. 2d 753, 755-56 (W.D. Va. 2007) (describing an attempt to satisfy a mortgage).

The goal of some sovereign citizens is the recovery of money from the United States that they actually—in the form of taxes—or purportedly paid to the government.  See, e.g., Ambort v. United States, 392 F.3d 1138, 1139 (10th Cir. 2004) (describing attempts to obtain a refund of federal income taxes); Troxelle v. United States, No. 10-312C, 2010 WL 3982349, at *1-2 (Fed. Cl. Oct. 6, 2010) (unpublished opinion) (describing the plaintiff's allegations that the issuance of his birth certificate and social security number created debts that the government was required to repay to him).  As the Honorable Norman K. Moon explained, such claims—which he described as "equal parts revisionist legal history and conspiracy theory"—are premised upon the following beliefs:

> Supposedly, prior to the passage of the Fourteenth Amendment, there were no U.S. citizens; instead, people were citizens only of their individual states.  Even after passage of the Fourteenth Amendment, U.S. citizenship remains optional.  The federal government, however, has tricked the populace into becoming U.S. citizens by entering into "contracts" embodied in such documents as birth certificates and social security cards.  With these contracts, an individual unwittingly creates a fictitious entity (i.e., the U.S. citizen) that represents, but is separate from, the real person.  Through these contracts, individuals also unknowingly pledge themselves and their property, through their newly created fictitious entities, as security for the national debt in exchange for the benefits of citizenship.  However, the government cannot hold the profits it makes from this use of its citizens and their property in the general fund of the United States because doing so would constitute fraud, given that the profits technically belong to the actual owners of the property being pledged (i.e., the real people represented by the fictitious entities).  Therefore, the government holds the profits in secret, individual trust accounts, one for each citizen.

> Because the populace is unaware that their birth certificates and such are actually contracts with the government, these contracts are fraudulent.  As a result, the officers of government are liable for treason unless they provide a remedy that allows an individual to recover what she is owed—namely, the profits held in her trust account, which the government has made from its use of her and her property in the commercial markets.  In 1933, the government provided just such a remedy with House Joint Resolution 192, and the Uniform Commercial Code (UCC) provides the means for a person to implement it.  The fact that virtually no one is aware of this remedy or how to use it is all part of the government's scheme—if no one takes advantage of the remedy, the government can keep the money, so it is in the government's interest that the remedy be obscure.

Bryant, 524 F. Supp. 2d at 758-59 (footnotes omitted); see also id. at 758 n.8 ("Further thickening the plot, the name of the fictitious entity is the real person's name in all-capital letters, which apparently explains why names are commonly written in all-capital letters on birth certificates, driver's licenses, and other government documents.").  To collect money held by the United States in the "secret, individual trust accounts," sovereign citizens employ a process known as "redemption."  Id. at 759.  In this process, sovereign citizens file one or more UCC financing statements naming themselves as both the secured party and the debtor, with the intent "to register a security interest in the fictitious entity that was created by [their] birth certificate and other government documents . . . ."  Id.  Typically, the secured party's name is written using only initial capital letters and the debtor's name is written in all capital letters.  Id. at 759 & n.11; United States v. Beeman, No. 1:10-cv-237-SJM, 2011 WL 2601959, at *11 (W.D. Pa. June 30, 2011).

### B.  Mr. Ammon's Factual Allegations

Mr. Ammon was born in Arizona in 1988.  Suppl. Compl. 1, 3.  Shortly thereafter, the United States Social Security Administration assigned Mr. Ammon a social security number, and the State Registrar of Arizona issued a birth certificate listing his full name.  Id.  Mr. Ammon emphasizes that his name was "register[ed] . . . in corporate form" pursuant to Arizona Administrative Code § R14-1-203.  Id. at 2.  That regulation provides, in part, that "[c]orporate names must consist of letters of the English alphabet . . . in the upper case (capital letters) only."  Ariz. Admin. Code § R14-1-203 (1982).

On August 1, 2018, Mr. Ammon filed a complaint against the United States in the United States District Court for the District of Arizona ("Arizona district court").  Ammon v. United States, No. CV-18-00374-TUC-JGZ, slip. op. at 1 (D. Ariz. Sept. 14, 2018).  The Arizona district court dismissed that complaint on September 14, 2018, but granted leave to file a first amended complaint "to cure the deficiencies" within thirty days.  Id. at 2-3.  In the dismissal order, the court specified that "[a] first amended complaint supersedes the original complaint" and that "[a]fter amendment, the Court will treat an original complaint as nonexistent."  Id. at 3 (citing Ferdik v. Bonzelet, 963 F.2d 1258, 1262 (9th Cir. 1992)).  The court further noted that, as a stand-alone document, the first amended complaint "may not incorporate any part of the original Complaint by reference."  Id.

Mr. Ammon filed his first amended complaint in the Arizona district court on September 26, 2018.  Compl., Ammon v. United States, No. CV-18-00374-TUC-JGZ (D. Ariz. Sept. 26, 2018).  In Count I of his first amended complaint, Mr. Ammon alleged a violation of the Due Process Clause of the Fourteenth Amendment:

> By and through the United States, the State of Arizona Charter enfranchised me, a natural born human being, as a corporate entity citizen of Arizona by registering my birth given name with the state or local registrar in the office of the Department of State.  By lack of disclosure, this unwittingly

> incorporated me into a political society as a corporation for
> municipal purposes using my name in all capital uppercase letters.

Id. at 3 (citing Ariz. Admin. Code § R14-1-203).

In Count II, Mr. Ammon alleged a Takings Clause violation based on a "taking of [his] personal property i.e. [his] body and natural liberty":

> Having declared bankruptcy in 1933 and initiating the
> Securities Act of 1933, the United States, by and through the
> charter of the State of Arizona, pledged me as a resident, as
> collateral for national debt.  This was done by enfranchising me as
> a citizen franchise.  This subjected me to involuntary citizenship or
> economic slavery in a political society.  This makes my
> person/body a property taken without compensation, and used for
> municipal purposes.  Knowledge of Sovereignty is 2 months.

Id. at 4.

Finally, in Count III, Mr. Ammon alleged a breach of an "implied[-]in-fact" contract under the Tucker Act "regarding a security certificate of indebtedness":

> (1) Mutual agreement of contract was established by lack
> of disclosure and through the use of coercion implied by law and
> the legal process.  My parents registered my name with the state
> registrar of the Department of State under the color of the
> Secretary of State, in the State of Arizona under the laws of the
> federal government Securities Act of 1933.  This enfranchised me
> as an economic slave a.k.a. "citizen[,"] with a promise of
> compensation.  These actions meet all elements necessary to be a
> valid contract implied[-]in-fact.  (2) Meeting of the minds are the
> drafters of such Securities Act by President Roosevelt and
> Congress House Joint Resolution 192, and parents.  (3) Contractual
> obligations are included in the Act of 1933 and the [issuance] of
> the bond note coupon certificate of indebtedness on the proper
> paper material, used for trade on the open market using the
> individual's social security [number] and certificate CUSIP
> number.  [Securities Act of 1933] details lack ambiguity.
> (4) Authority to bind into contract is anyone from local registrar,
> [Arizona] Secretary of State, to U.S. Treasurer.

Id. at 5.

To compensate for these purported constitutional and contractual violations, Mr. Ammon sought "[m]itigated monetary relief in the amount of $49,777,666.00." Id. at 6. As of the date of this opinion, Mr. Ammon's first amended complaint in the Arizona district court remains pending.

Mr. Ammon filed suit in the United States Court of Federal Claims ("Court of Federal Claims") on October 15, 2018, describing himself as "a 'good role' native [indigenous] sovereign being of the United States, enfranchised under the State of Arizona's charter." Compl. 1. He seeks $49,777,666 in compensation for "redemption and relief for his withheld authentic savings coupon bond certificate of indebtedness entitled to him under the provisions and regulations [of] 31 C.F.R. § 315.35(a)" and "as stated on his Uniform Commercial Code financial form." Id. Mr. Ammon alleges that "[e]vidence of this bond is with the state registrar of Arizona and the Treasury of the United States, in registered form which [is] conclusive, thus[] expressing ownership by using his birth name in corporate form pursuant to [Arizona Administrative Code] § R14-1-203, and issuance of an account number or taxpayer identification number (TIN)." Id.

Shortly thereafter, on November 5, 2018, Mr. Ammon filed a supplemental complaint in which he repeats the allegations contained in his original complaint and provides additional contentions. In support of his claim for breach of contract, which he alleges also "brings rise to a Fifth Amendment[] Taking," Suppl. Compl. 1, Mr. Ammon states:

> Mutual Intent to contract is evidenced by the registering of plaintiff's name in corporate form p[u]rsuant to [Arizona Administrative Code] § R14-1-203 with local and federal government.

> Consideration of both parties was demonstrated upon the conduct of enfranchising of the plaintiff, for purposes of suffrage and taxation in exchange for lifetime benefits of citizenship, including life, liberty, and p[u]rsuit of happiness.

> Lack of Ambiguity of offer and acceptance is clearly established by the assignment of [Mr. Ammon's social security number] for the "Cestui que vie" held in trust by The United States Treasury, for which the plaintiff was issued a certificate of indebtedness, a coupon bond documenting the plaintiff as the beneficiary.[1]

---

[1] "Cestui que vie" is a French term that means "[t]he person whose life measures the duration of a trust, gift, estate, or insurance contract." Cestui que vie, Black's Law Dictionary (10th ed. 2014).

        Authority of Individual to Bind Government Into Contract,
was the Treasurer of the United States under the color of law
acting in accompaniment with the State Registrar and Secretary of
State where plaintiff was born in 1988.  These individuals are
authorized officials according to 31 C.F.R. [§] 315.55.

Id. at 2-3 (footnote added).

       Mr. Ammon asserts that, pursuant to the contract he alleges was created between himself
and the federal government upon the issuance of his birth certificate and social security number,
the government has the "obligation or duty" to compensate him for "his part as a 'good role'
citizen (paying taxes, voting, using his corporate name traded on the open market)."  Id. at 3.
Mr. Ammon further asserts that the government breached that duty by its failure "to pay [Mr.
Ammon] for his duties as an enfranchised citizen," id. at 3-4, and that he has suffered damages in
the form of "loss of his inherent rights as sovereignty born in the 'land of the free,' consequently
depriving him of life, liberty, and pursuit of happiness by taking his property/body for
governmental purposes without compensation in violation of the [Takings Clause]," id. at 4.  He
also contends that because he has "only just recently requested redemption and relief for the
bond in question, which is contractually attached to his person/property of self," his claim is not
barred by the six-year statute of limitations applicable in the Court of Federal Claims.  Id.

       In the meantime, on October 29, 2018, the court ordered Mr. Ammon to either pay the
required filing fee or submit a completed application to proceed in forma pauperis.  The court
stayed proceedings in this case pending Mr. Ammon's compliance with that order.  Mr. Ammon
filed an application to proceed in forma pauperis on January 3, 2019.  On January 7, 2019, the
court granted Mr. Ammon's application, but kept the stay in place due to the lapse of
appropriated funds to the United States Department of Justice that began on December 22, 2018.
On February 8, 2019, the court observed that Congress restored appropriated funds to the
Department of Justice on January 25, 2019, and ordered defendant to file its answer to Mr.
Ammon's complaint by March 26, 2019.  However, on reviewing Mr. Ammon's complaint,
supplemental complaint, and litigation history, the court has determined that there is no need to
await defendant's answer to resolve this case.

## II.  LEGAL STANDARDS

### A.  Pro Se Plaintiffs

       Pro se pleadings are "held to less stringent standards than formal pleadings drafted by
lawyers" and are "to be liberally construed."  Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per
curiam) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)).  However, the "leniency afforded
to a pro se litigant with respect to mere formalities does not relieve the burden to meet
jurisdictional requirements."  Minehan v. United States, 75 Fed. Cl. 249, 253 (2007); accord
Henke v. United States, 60 F.3d 795, 799 (Fed. Cir. 1995) ("The fact that [the plaintiff] acted
pro se in the drafting of his complaint may explain its ambiguities, but it does not excuse its
failures, if such there be.").  In other words, a pro se plaintiff is not excused from his burden of

proving, by a preponderance of evidence, that the court possesses jurisdiction.  See McNutt v. Gen. Motors Acceptance Corp., 298 U.S. 178, 179 (1936); Banks v. United States, 741 F.3d 1268, 1277 (Fed. Cir. 2014) (citing Reynolds v. Army & Air Force Exch. Serv., 846 F.2d 746, 748 (Fed. Cir. 1988)).

## B.  Subject-Matter Jurisdiction

Whether the court possesses jurisdiction to decide the merits of a case is a "threshold matter."  Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94-95 (1998).  Subject-matter jurisdiction cannot be waived or forfeited because it "involves a court's power to hear a case." Arbaugh v. Y & H Corp., 546 U.S. 500, 514 (2006) (quoting United States v. Cotton, 535 U.S. 625, 630 (2002)).  "Without jurisdiction the court cannot proceed at all in any cause.  Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause."  Ex parte McCardle, 74 U.S. (7 Wall) 506, 514 (1868).  Therefore, it is "an inflexible matter that must be considered before proceeding to evaluate the merits of a case."  Matthews v. United States, 72 Fed. Cl. 274, 278 (2006); accord K-Con Bldg. Sys., Inc. v. United States, 778 F.3d 1000, 1004-05 (Fed. Cir. 2015).

Either party, or the court sua sponte, may challenge the court's subject-matter jurisdiction at any time.  Arbaugh, 546 U.S. at 506.  The court must examine all pertinent issues relevant to subject-matter jurisdiction because "[c]ourts have an independent obligation to determine whether subject-matter jurisdiction exists, even when no party challenges it."  Hertz Corp. v. Friend, 559 U.S. 77, 94 (2010); accord Gonzalez v. Thaler, 565 U.S. 134, 141 (2012) ("When a requirement goes to subject-matter jurisdiction, courts are obligated to consider sua sponte issues that the parties have disclaimed or have not presented.").  In other words, a court may examine the issue of subject matter jurisdiction "on its own initiative" at any point in a case.  Arbaugh, 546 U.S. at 506; see also Jeun v. United States, 128 Fed. Cl. 203, 209-10 (2016) (collecting cases).

In determining whether subject-matter jurisdiction exists, the court generally "must accept as true all undisputed facts asserted in the plaintiff's complaint and draw all reasonable inferences in favor of the plaintiff."  Trusted Integration, Inc. v. United States, 659 F.3d 1159, 1163 (Fed. Cir. 2011).  However, the court has no subject-matter jurisdiction over frivolous claims.  Moden v. United States, 404 F.3d 1335, 1340-41 (Fed. Cir. 2005).  For example, there is no subject-matter jurisdiction over claims that are "so insubstantial, implausible, foreclosed by prior decisions . . . , or otherwise completely devoid of merit as not to involve a federal controversy."  Id. at 1341 (quoting Steel, 523 U.S. at 89); see also Denton v. Hernandez, 504 U.S. 25, 33 (1992) ("[A] finding of factual frivolousness is appropriate when the facts alleged rise to the level of the irrational or the wholly incredible . . . .").  If the court finds that it lacks subject-matter jurisdiction over a claim, RCFC 12(h)(3) requires the court to dismiss that claim.

## C.  The Tucker Act

The ability of the Court of Federal Claims to entertain suits against the United States is limited.  "The United States, as sovereign, is immune from suit save as it consents to be sued." United States v. Sherwood, 312 U.S. 584, 586 (1941).  The waiver of immunity "may not be inferred, but must be unequivocally expressed."  United States v. White Mountain Apache Tribe, 537 U.S. 465, 472 (2003).  The Tucker Act, the principal statute governing the jurisdiction of this court, waives sovereign immunity for claims against the United States, not sounding in tort, that are founded upon the United States Constitution, a federal statute or regulation, or an express or implied contract with the United States.  28 U.S.C. § 1491(a)(1) (2012); White Mountain, 537 U.S. at 472.  However, the Tucker Act is merely a jurisdictional statute and "does not create any substantive right enforceable against the United States for money damages." United States v. Testan, 424 U.S. 392, 298 (1976).  Instead, the substantive right must appear in another source of law, such as a "money-mandating constitutional provision, statute or regulation that has been violated, or an express or implied contract with the United States."  Loveladies Harbor, Inc. v. United States, 27 F.3d 1545, 1554 (Fed. Cir. 1994) (en banc).

## III.  ANALYSIS

Mr. Ammon's complaint and supplemental complaint in the Court of Federal Claims, as well as his first amended complaint in the Arizona district court, contain no factual allegations beyond his birth in the state of Arizona, the filing of his birth certificate, and the assignment of his social security number.  Under a liberal construction of his complaint, Mr. Ammon alleges a breach of contract, a Takings Clause violation, and tortious conduct and civil rights violations on the part of federal and state officials and entities.  His legal contentions notwithstanding, the court clearly lacks jurisdiction over all of Mr. Ammon's claims.

## A.  The United States Is the Only Proper Defendant in the Court of Federal Claims

Mr. Ammon alleges that the State Registrar of Arizona, under the direction of the Arizona Secretary of State, "register[ed his] name in corporate form" with the "local and federal government" when it issued his birth certificate.  Suppl. Compl. 2.  However, in the Court of Federal Claims, "the only proper defendant . . . is the United States, not its officers, nor any other individual."  Stephenson v. United States, 58 Fed. Cl. 186, 190 (2003); accord RCFC 10(a). Because "the United States itself" is the only proper defendant in the Court of Federal Claims, this court lacks jurisdiction "over any claims alleged against states, localities, state and local government entities, or state and local government officials and employees."  Anderson v. United States, 117 Fed. Cl. 330, 331 (2014).  In other words, "if the relief sought [in the Court of Federal Claims] is against other than the United States, the suit as to them must be ignored as beyond the jurisdiction of the court."  Sherwood, 312 U.S. at 584.  Accordingly, to the extent that Mr. Ammon complains of improper conduct by parties other than the United States federal government, this court lacks jurisdiction over those claims, and they must be dismissed.

**B.  The Court of Federal Claims Lacks Jurisdiction Over Mr. Ammon's Torts and Civil Rights Claims**

To the extent that Mr. Ammon seeks relief in this court based on alleged tortious conduct and civil rights violations, the Court of Federal Claims lacks jurisdiction.

First, the Court of Federal Claims is not a federal district court.  Ledford v. United States, 297 F.3d 1378, 1382 (Fed. Cir. 2002); see also Lightfoot v. Cendant Mortg. Corp., 137 S. Ct. 553, 563 (2017) (distinguishing between the "Court of Federal Claims" and "federal district courts").

Second, only federal district courts possess jurisdiction to entertain claims alleging civil rights violations.  See, e.g., Jones v. United States, 104 Fed. Cl. 92, 98 (2012) (explaining that the Court of Federal Claims has no jurisdiction over claims based on, among other causes of action, alleged "violations of . . . civil rights"); Marlin v. United States, 63 Fed. Cl. 475, 476 (2005) (explaining that Bivens claims and claims alleging violations of 42 U.S.C. §§ 1981, 1983, and 1985 must be brought before federal district courts).

Third, this court lacks jurisdiction to entertain claims sounding in tort.  28 U.S.C. § 1491(a)(1); Rick's Mushroom Serv., Inc. v. United States, 521 F.3d 1338, 1343 (Fed. Cir. 2008).  Under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b)(1), 2671-2680, jurisdiction over tort claims against the United States lies exclusively in federal district courts.  U.S. Marine, Inc. v. United States, 722 F.3d 1360, 1365-66 (Fed. Cir. 2013).  Claims of fraud, conspiracy, breach of fiduciary duty, and false imprisonment sound in tort.  See, e.g., Lawrence Battelle, Inc. v. United States, 117 Fed. Cl. 579, 585 (2014) (fraud); Cox v. United States, 105 Fed. Cl. 213, 218 (2012) (breach of fiduciary duty); Gant v. United States, 63 Fed. Cl. 311, 316 (2004) (conspiracy); Dethlefs v. United States, 60 Fed. Cl. 810, 811 (2004) (false imprisonment and fraud).

**C.  The Court of Federal Claims Lacks Jurisdiction Over Mr. Ammon's Breach-of-Contract Claim**

Mr. Ammon's breach-of-contract claim fares no better.  In contract disputes, the "money-mandating requirement for Tucker Act jurisdiction normally is satisfied by the presumption that money damages are available for breach of contract."[2]  Holmes, 657 F.3d at 1314.  Therefore, a "non-frivolous allegation of a contract with the government" is generally sufficient to invoke the court's Tucker Act jurisdiction.  Engage Learning, Inc. v. Salazar, 660 F.3d 1346, 1353 (Fed. Cir. 2011) (emphasis added).

---

[2]  The mere existence of a contract, however, does not automatically allow for the exercise of jurisdiction under the Tucker Act because not all contracts contemplate money damages.  See Holmes v. United States, 657 F.3d 1303, 1314 (Fed. Cir. 2011) (describing contracts that do not fall within the reach of the Tucker Act).

Although Mr. Ammon correctly recites the elements to establish a breach of contract, including the elements to establish the existence of an express contract, the Court of Federal Claims lacks jurisdiction to consider his breach-of-contract claim.[3]  The alleged contract upon which he bases his claim stems from the issuance of his birth certificate and social security number.  This is a classic argument advanced by adherents of the sovereign citizen movement.  Such claims "are frivolous and cannot serve as the basis for this Court's assertion of jurisdiction."  Mitchell v. United States, 136 Fed. Cl. 286, 288 (2018); accord Rivera v. United States, 105 Fed. Cl. 644, 650 (2012) ("[N]either a birth certificate nor a social security number evidence a contract on which a private party can sue the Government.").

Mr. Ammon also relies on 31 C.F.R. §§ 315.35(a) and 315.36, in conjunction with his birth certificate and social security number, to support the existence of a "certificate of indebtedness savings bond" that the federal government has failed to redeem such that it is now liable for breach of contract.  Suppl. Compl. 1.  Such reliance lacks merit.  As relevant here, those regulations provide that "[p]ayment of a savings bond will be made to the person or persons entitled under the provision of these regulations," 31 C.F.R. § 315.35(a) (2018) (emphasis added), and that "[a] savings bond registered in single ownership form . . . will be paid to the owner during his or her lifetime upon surrender with an appropriate request," id. § 315.36 (emphasis added).  In addition, 31 C.F.R. § 315.39 contains specific procedures for the surrender of bonds for payment.  To redeem a savings bond for payment, a person must "present the bond to an authorized paying agent for redemption," "establish his or her identity," and "record his or her social security number on the face of the security."[4]  Id. § 315.39(a).  Assuming that a birth certificate could be used to establish a person's identity "in accordance with Treasury instructions and guidelines," id., a social security number is not "a certificate of indebtedness [or] a coupon bond documenting [the named party] as the beneficiary," Suppl. Compl. 3.  In short, Mr. Ammon's allegation that his birth certificate and social security number entitle him to receive payment under these provisions are so "implausible [and] otherwise completely devoid of merit as not to involve a federal controversy."  Moden, 404 F.3d at 1340-41.

### D.  The Court of Federal Claims Lacks Jurisdiction Over Mr. Ammon's Takings Clause Claim

Mr. Ammon's Takings Clause claim is equally untenable.  The Fifth Amendment prohibits the federal government from taking private property for public use without paying just compensation.  U.S. Const. amend. V.  "It is undisputed that the Takings Clause of the Fifth Amendment is a money-mandating source [of law] for purposes of Tucker Act jurisdiction" in

---

[3]  Mr. Ammon does not suggest that he has an implied-in-fact contract with the federal government.  To the extent that his complaint alleges the existence of an implied-in-law contract with the federal government, the Court of Federal Claims lacks jurisdiction to consider that claim.  Hercules, Inc. v. United States, 516 U.S. 417, 423 (1996).

[4]  Additional provisions pertain to lost, stolen, or destroyed bonds.  See, e.g., 31 C.F.R. §§ 315.25-29.  Mr. Ammon does not cite any of these provisions or provide any factual allegations that could be construed as compliance therewith.

the Court of Federal Claims.  <u>Jan's Helicopter Serv., Inc. v. FAA</u>, 525 F.3d 1299, 1309 (Fed. Cir. 2008).  However, a plaintiff must still allege a nonfrivolous Takings Clause claim to invoke this court's Tucker Act jurisdiction.  <u>Moden</u>, 404 F.3d at 1341.

Mr. Ammon's Takings Clause claim is based entirely on defendant's purported breach of contract.  <u>See</u> Suppl. Compl. 1 ("[T]he government's breach of contract with the Plaintiff . . . brings rise to a <u>Fifth Amendment[] Taking</u> . . . .").  As discussed above, his allegations concerning a breach of contract are frivolous and thus beyond the jurisdiction of this court.  <u>See</u> <u>supra</u> Section III.C.  Therefore, the court similarly cannot exercise jurisdiction over his Takings Clause claim.

### E.  Mr. Ammon's Claims Are Pending in Another Court

In any event, Mr. Ammon's suit is barred in this court by the application of 28 U.S.C. § 1500 because the same claims were pending in the Arizona district court when he filed his complaint in the instant case.

The Court of Federal Claims does not possess jurisdiction to hear claims that are pending in another court.  28 U.S.C. § 1500; <u>United States v. Tohono O'Odham Nation</u>, 563 U.S. 307, 311 (2011); <u>Brandt v. United States</u>, 710 F.3d 1369, 1374 (Fed. Cir. 2013); <u>Res. Invs., Inc. v. United States</u>, 114 Fed. Cl. 639, 647 (2014).  Whether this statutory bar to jurisdiction applies is measured at the time the complaint is filed.  <u>Brandt</u>, 710 F.3d at 1379-80; <u>Res. Invs.</u>, 114 Fed. Cl. at 647; <u>Vero Tech. Support, Inc. v. United States</u>, 94 Fed. Cl. 784, 790 (2010).

> To determine whether [28 U.S.C.] § 1500 applies, a court must make two inquiries:  (1) whether there is an earlier-filed "suit or process" pending in another court, and, if so, (2) whether the claims asserted in the earlier-filed case are "for or in respect to" the same claim(s) asserted in the later-filed Court of Federal Claims action.  If the answer to either of these questions is negative, then the Court of Federal Claims retains jurisdiction.

<u>Brandt</u>, 710 F.3d at 1374.  Two actions are "for or in respect to the same claim . . . if they are based on substantially the same operative facts, regardless of the relief sought in each suit." <u>Tohono</u>, 563 U.S. at 317.

First, Mr. Ammon had "an earlier-filed 'suit or process' pending in another court," <u>Brandt</u>, 710 F.3d at 1374, when he filed his complaint here on October 15, 2018.  Although his original complaint in the Arizona district court was dismissed on September 14, 2018, he was given leave to file a first amended complaint, which he did on September 26, 2018.  His first amended complaint was pending in the Arizona district court when he initiated the case at bar (and remains pending).

Second, Mr. Ammon's first amended complaint in the Arizona district court involves the same claims as asserted here.  While Mr. Ammon advances two theories in the Arizona district court that he does not assert here—a Due Process Clause violation and breach of an implied-in-fact contract—and his Takings Clause claims in the Arizona district court and the Court of Federal Claims are arguably distinguishable, the two cases nevertheless appear to be "based on substantially the same operative facts."  Tohono, 563 U.S. at 317.  The gravamen of both cases is Mr. Ammon's contention that the issuance of his birth certificate and social security number constitute a certificate of indebtedness entitling him to payment.

Therefore, since Mr. Ammon had an earlier-filed suit pending in the Arizona district court when he filed his complaint in the Court of Federal Claims, and the same operative facts underlie both actions, this court is divested of jurisdiction pursuant to 28 U.S.C. § 1500.

## F. The Court Declines to Transfer This Case

When the Court of Federal Claims lacks jurisdiction over a claim, it is empowered to transfer such claim to an appropriate court if doing so "is in the interest of justice."  28 U.S.C. § 1631.  "Transfer is appropriate when three elements are met:  (1) [t]he transferring court lacks subject matter jurisdiction; (2) the case could have been filed in the court receiving the transfer; and (3) the transfer is in the interests of justice."  Brown v. United States, 74 Fed. Cl. 546, 550 (2006).

In the instant case, the first element is met with respect to Mr. Ammon's breach-of-contract and Takings Clause claims because, as discussed above, the Court of Federal Claims lacks jurisdiction over his claims.  However, the second element for transfer is not met.  The jurisdiction of federal district courts to consider breach-of-contract and Taking Clause claims against the federal government is limited to claims "not exceeding $10,000 in amount."  28 U.S.C. § 1346(a)(2).  In the instant case, Mr. Ammon seeks damages of nearly $50 million, thus exceeding the amount allowable in district court.  The failure of the second element also results in a failure of the third element; since a district court would not have jurisdiction over Mr. Ammon's breach-of-contract and Takings Clause claims—and in any event, those claims are frivolous—transferring those claims would not serve the interests of justice.  Therefore, the court cannot transfer Mr. Ammon's claims to another court.

### IV.  CONCLUSION

The Court of Federal Claims lacks jurisdiction over Mr. Ammon's claims, and the court finds that they are frivolous.  Further, transferring his case to a federal district court is not in the interests of justice.  Accordingly, Mr. Ammon's complaint is **DISMISSED WITHOUT PREJUDICE** for lack of subject-matter jurisdiction.  No costs.  The clerk is directed to enter judgment accordingly.

In addition, the court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this order would not be taken in good faith because, as asserted, Mr. Ammon's claims are clearly beyond the subject-matter jurisdiction of this court.

**IT IS SO ORDERED.**

MARGARET M. SWEENEY
Chief Judge

-13-